Curtis L. WRENN, Plaintiff,

v.

James G. LEDBETTER, Commissioner, Department of Human Resources, State of Georgia; Myers R. Kurtz, Individually and as Superintendent of Central State Hospital, Defendants.

Civ. A. No. 1:85–CV–4737–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 21, 1988.

Curtis L. Wrenn, Albany, N.Y., pro se.

Bryndis R. Jenkins, Rita J. Llop, Office of State Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This employment discrimination action is before the court on cross motions for summary judgment, on the plaintiff's motion to extend time to respond to the defendants' motion for summary judgment, and on the plaintiff's motion for leave to file a reply to the defendants' response on his motion for reconsideration. The latter two motions will be GRANTED as unopposed. For the reasons discussed below, the defendants' motion for summary judgment will be GRANTED and the plaintiff's motion for summary judgment will be DENIED.

## I. FACTS [1]

The plaintiff was employed as the Superintendent of the Toledo Mental Health Center in Toledo, Ohio from November 1979 until he was removed from the position in December 1980. The plaintiff was re-moved from the position by the director of the mental health center, Donald E. Widman, because of a lack of confidence in the plaintiff and his administration of the mental health center. The plaintiff's removal was reviewed and upheld by defendant Kurtz, who was at the time the Director of the Ohio Department of Mental Health.

The plaintiff then applied for and was refused several vacant positions with the Ohio Department of Mental Health. The plaintiff subsequently filed several lawsuits challenging his removal and the State of Ohio's failure to hire him to the vacant positions.[2] The district court in Ohio granted summary judgment against the plaintiff on his failure to hire claim. *Wrenn v. Kurtz,* Nos. C81–665, C82–205 (N.D.Ohio Mar. 9, 1984), *vacated on other grounds,* 762 F.2d 1014 (6th Cir.1985). After trial, the court entered a verdict against the plaintiff on his discriminatory termination and retaliatory discharge claims. *Wrenn v. Benson,* No. C81–571 (N.D.Ohio Feb. 5, 1987).

Defendant Kurtz assumed the position of Superintendent of Central State Hospital, Georgia Department of Human Resources, on September 16, 1983. At the time of his appointment, the position of Director of the Georgia War Veterans Home remained open. In order to appoint the appropriate individual for the position, defendant Kurtz appointed a selection committee to review applications and to recommend three individuals to him for interviews.

In August 1983 the plaintiff submitted an application to Central State Hospital for the position of Director of the Georgia War Veterans Home. Before the list of applicants was referred to the selection committee, defendant Kurtz reviewed the list and removed the plaintiff's name from consideration by the committee. The plaintiff was the only individual on the list known to defendant Kurtz. Defendant Kurtz removed the plaintiff's name from considera-

---

1. In ruling on these motions for summary judgment, all pleadings, motions, and discovery material on file with the Clerk's office as of the date of this order have been considered.

2. At last count, the plaintiff was able to specify at least thirty-one federal lawsuits and 133 charges of discrimination that he has filed in at least twenty-nine states against various employers or would-be employers.

tion because "[he would] not hire someone that [he] fired or upheld a firing in any management position," regardless of the reason the person was fired. Defendant Kurtz believed that it would not be necessary for the plaintiff to travel to Georgia for an interview when he would not be considered for employment due to the previous termination from his position at the Toledo Mental Health Center.

As Superintendent of Central State Hospital, defendant Kurtz had the sole authority to hire the director of the Georgia War Veterans Home, a position that reports directly to defendant Kurtz. In December 1983, defendant Kurtz appointed Alice K. Paschal to the position. Ms. Paschal had been employed at Central State Hospital for twenty-one years, had worked in administrative positions, including the positions of unit director and acting director, and, at the time of her selection, was acting director of the Georgia War Veterans Home. Ms. Paschal was one of three people recommended for the position by the selection committee. Defendant Kurtz chose Ms. Paschal, ranked second by the selection committee, because he believed that she was the best qualified applicant based on his evaluation of her performance and review of her record.

## II. DISCUSSION

In this action, the plaintiff proceeds under Title VII and 42 U.S.C. §§ 1981, 1983 and 1985. In addition, the plaintiff includes a claim for common law defamation. The plaintiff is suing the Georgia Department of Human Resources, James G. Ledbetter in his official capacity as Commissioner of the Department of Human Resources, and defendant Kurtz, both individually and in his official capacity as Superintendent of Central State Hospital. Each of

the plaintiff's claims will be discussed in turn.

### A. Title VII Claims

Under Title VII, the plaintiff asserts two grounds for recovery: discriminatory failure to hire and retaliatory failure to hire. Claims of discriminatory failure to hire are analyzed under the following framework:

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973).[3] The Eleventh Circuit recently described how the burden of proof shifts between the parties after the prima facie case is established:

If plaintiff can establish a prima facie case, a presumption arises that defendant fired [or failed to hire] plaintiff for discriminatory reasons. Defendant can easily rebut this presumption, however, by articulating some legitimate business reason for its actions. Once defendant states a legitimate reason, plaintiff must show that defendant's articulated reason is merely a pretext and that defendant's true reason for discharging plaintiff was discrimination. Plaintiff can establish pretext by showing that despite the stated business reason, plaintiff would not have been fired but for discrimination, or

---

**3.** The plaintiff's contention that the EEOC finding of reasonable cause in connection with his removal from the Toledo Mental Health Center position constitutes direct evidence of discrimination is without merit. Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption." Black's Law Dictionary 413 (5th ed. 1979), quoted in *Rollins v. TechSouth, Inc.,* 833

F.2d 1525, 1528 n. 6 (11th Cir.1987). It is clear that a reasonable cause determination by the EEOC does not constitute direct evidence of discrimination under the above standard. In fact, EEOC reports are not binding on district courts and a court is not obliged to address or even refer to EEOC findings in its opinion. *Moore v. Devine,* 767 F.2d 1541, 1550–51 (11th Cir.1985).

by proving that employer's explanation is not credible.

*Rollins,* 833 F.2d at 1528–29.

■ In this case, the defendants concede arguendo the plaintiff's prima facie case and argue that the plaintiff was not hired for a legitimate non-discriminatory reason: It is defendant Kurtz's "managerial policy not to hire an individual whom [he has] either terminated from employment or upheld the removal from a position." Kurtz Aff., para. 7. The court agrees with the defendants that the plaintiff fails to produce any evidence that the defendant's articulated reason is merely a pretext.

First, the defendant's explanation is credible, as required by *Rollins,* 833 F.2d at 1529. As the Sixth Circuit Court of Appeals noted in the plaintiff's previous suit against defendant Kurtz,

> The trial court concluded that Wrenn was not considered for the advertised positions because of his previous discharge as superintendent of TMHC. That discharge could furnish a legitimate, non-discriminatory reason for defendants' refusal to consider him for like positions ... if it were established that the prior discharge was for cause and was itself not motivated by considerations of either Wrenn's race or his participation in protected activity.

*Wrenn v. Kurtz,* No. 84–3228 slip op. at 3 [762 F.2d 1014 (table) ]. The trial court did subsequently determine that the prior discharge was for cause and was not discriminatory. *Wrenn v. Benson,* No. C81–571 slip op. at 2–3.

Second, it is pointless for the plaintiff to argue that his removal from the Toledo Mental Health Center position was itself discriminatory. That claim has already been decided against the plaintiff in *Wrenn v. Benson* and he is estopped from re-litigating the issue here. Third, contrary to the plaintiff's argument, there is no evidence that defendant Kurtz's "managerial policy" was a new qualification specially created in order to discriminate against the plaintiff. The cases cited by the plaintiff dealing with job qualifications applied discriminatorily are inapposite since the plain-

tiff has produced no evidence that defendant Kurtz applied his policy differently to other applicants for this position or for any other position.

■ The framework for analyzing claims of retaliatory failure to hire is similar to the framework for discriminatory failure to hire claims. The "plaintiff must establish (1) actions protected by the statute, (2) an adverse employment decision, and (3) a causal link between the protected actions and the adverse employment decision." *Thompkins v. Morris Brown College,* 752 F.2d 558, 565 n. 18 (11th Cir.1985). The burden of going forward then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse decision. *Hamm v. Members of Board of Regents of State of Florida,* 708 F.2d 647, 654 (11th Cir.1983).

In this case, it is doubtful that the plaintiff has established even a prima facie case, since the only evidence of a causal link between his previous attempts to vindicate his rights under Title VII and the rejection of his application for the position at issue here is the chronology of the two events. Even if the plaintiff has properly established a prima facie case, however, the defendants have articulated a legitimate nondiscriminatory reason for their decision not to hire the plaintiff which the plaintiff has failed to rebut, as discussed above. The necessary conclusion is that the defendants are entitled to judgment as a matter of law on the plaintiff's Title VII claims.

*B. Section 1981 and 1983 Claims*

■ The *McDonnell–Douglas* framework applies to the plaintiff's section 1981 and section 1983 claims as well. *See Conner v. Ft. Gordon Bus Company,* 761 F.2d 1495, 1498 (11th Cir.1985) (section 1981); *Lee v. Russell County Board of Education,* 684 F.2d 769, 773 (11th Cir.1982) (section 1983). The same result necessarily follows: the defendants have articulated a legitimate non-discriminatory reason for their actions and the plaintiff has failed to introduce any evidence that the asserted justification is pretextual. Accordingly,

the defendants are entitled to judgment as a matter of law.

### C. Section 1985 Claim

To make out a violation of 42 U.S.C. § 1985(3), the plaintiff must allege and prove four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Carpenters v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). In light of the court's conclusions above as to the plaintiff's Title VII, section 1981, and section 1983 claims, it is clear that the plaintiff has failed to establish that he was injured or deprived of any right or privilege by the defendant's actions, even assuming that the other elements of a section 1985 claim were present. Moreover, section 1985 prohibits only those conspiracies that are "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.*, quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). As discussed above, the plaintiff in this case has produced no evidence that the defendants' actions were the result of either racial bias or retaliation for previous civil rights complaints.

### D. Defamation Claim

The defendants' motion for summary judgment on the plaintiff's defamation claim must also be granted. First, the plaintiff fails to respond to the summary judgment motion as to the defamation claim and the motion is therefore deemed unopposed. Local Rule 220–1(b)(1). Second, the actions of which the plaintiff complains simply do not amount to defamation under Georgia law. In his complaint, the plaintiff alleges that defendant Kurtz has made "unwarranted, untrue and unsupported statements that plaintiff was fired by State of Ohio for poor performance of duty." During the course of this action, the plaintiff has failed to elaborate on the allegations of his complaint by specifying any particular statements at any particular time to any particular person. The only evidence in the record is defendant Kurtz's own testimony that he never received any inquiries regarding the plaintiff's employment in Ohio and that he has not given any employment reference concerning the plaintiff. Kurtz Aff., para. 6. Defendant Kurtz's "employment reference" regarding the plaintiff's application for the position at issue in this case was limited to the statement that he had upheld the plaintiff's removal from a position in Ohio, without any indication of the reasons for the removal. Kurtz Aff., para. 7. That statement was true and cannot be the basis for a defamation claim. *See* O.C.G.A. 51–5–6.

## III. OTHER MOTIONS

The plaintiff's motion to extend time to respond to the defendants' motion for summary judgment was unopposed and is therefore GRANTED. The plaintiff's motion for leave to file a reply to the defendants' response to the plaintiff's motion for reconsideration is unnecessary under Local Rule 220–1(b)(2), but the motion will be GRANTED for purposes of the record.

## IV. CONCLUSION

In summary, the defendants' motion for summary judgment on the plaintiff's Title VII, section 1981, section 1983, and section 1985 claims is GRANTED and the plaintiff's motion for summary judgment on the same claims is DENIED. The defendants have articulated a legitimate non-discriminatory reason for their decision not to hire the plaintiff and the plaintiff has introduced no evidence that the asserted justification is pretextual. The plaintiff's failure to establish the existence of an element essential to his case and on which he bears the burden of proof requires that the defendants' motion for summary judgment be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The defendants' motion for summary judgment on the plaintiff's defamation claim is GRANTED because the plaintiff has produced no evidence of any false statements. Finally, the plaintiff's motion to extend time to respond to the defendants' motion for summary judgment is GRANTED and the plaintiff's motion for leave to file a reply is GRANTED. The response and the reply will be accepted as filed.

The stay entered at the May 17, 1988 hearing is hereby lifted and judgment should be entered for the defendants for costs plus the $100 sanction imposed at the May 17th hearing.

SO ORDERED.