Donna M. MCGUIRE, Plaintiff,

v.

COMMONWEALTH OF VIRGINIA,
Defendant.

No. Civ.A. 96–0761–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 25, 1997.

Terry Neill Grimes, King, Fulghum, Snead, Nixon and Grimes, P.C, Roanke, VA, for Plaintiff.

James S. Gilmore, III, William Gatling Atkinson, Neil Anthony Gordon McPhie, Catherine Currin Hammond, Office of Atty. Gen., Richmond, VA, Jack Rhoades, Cake & Rhoades, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Donna M. McGuire is an employee of the Virginia Veterans Care Center Board of Trustees. In Count I of her amended complaint, she alleges sexual harassment in violation of Title VII of the United States Code, and she seeks relief for assault and battery pursuant to Virginia common law. In Count II of her amended complaint, she seeks relief for retaliation in violation of Title VII of the United States Code.

Before me is defendant Commonwealth of Virginia's motion for summary judgment. The parties have fully briefed the issues involved, and they have submitted the issues to the court on the briefs, in lieu of oral argument. The motion is therefore ripe for disposition. For the reasons contained herein, defendant's motion shall be **GRANTED** with respect to the allegation of assault and battery in Count I. Regarding the Title VII sexual harassment allegation in Count I, the motion is **DENIED**. The motion is **GRANTED** with respect to the retaliation allegation in Count II.

## I. FACTS

As noted above, plaintiff, Donna McGuire, works for the Board of Trustees ("Board") of the Virginia Veterans Care Center ("VVCC"). Ms. McGuire began work as an Executive Secretary Senior for the VVCC Board on September 1, 1993. The VVCC is an agency of the Commonwealth created by the Virginia General Assembly and under the supervision of the Secretary of Administration. Its enabling statutes can be found at Virginia Code §§ 2.1–744.1–744.6. The Governor appoints a Board of Trustees to manage the VVCC. In turn, the Board hires an Executive Director to run the day-to-day opera-

tions of the VVCC. Thus, the Executive Director reports to the Board of Directors, and the Chairman of the Board of Trustees reports to the Commonwealth's Secretary of Administration, the Honorable Michael E. Thomas. At all times during her employment, the plaintiff, Ms. McGuire, has been paid by the Commonwealth of Virginia.

Mr. Walter Sanford, Jr. was the Chairman of the VVCC Board of Trustees when Ms. McGuire was hired. Mr. Sanford is no longer on the VVCC Board. Mr. Sanford occasionally brought his adult incompetent son, Sandy, to the VVCC. Ms. McGuire alleges that Mr. Sanford brought Sandy to the VVCC about once a month. According to Ms. McGuire, Mr. Sanford left Sandy in her office whenever he brought Sandy to the VVCC. McGuire Dep. at 54–55.

Ms. McGuire asserts that Sandy began making sexually suggestive and offensive comments to her shortly after she began working for the VVCC. According to Ms. McGuire, Sandy made comments such as "I love you;" "I want to marry you;" "Dad says you have nice legs;" and "Dad says you should wear your skirts shorter." She asserts that Sandy made such comments "all the time." McGuire Dep. at 55–56. She also contends that Sandy followed closely behind her wherever she went in the office and touched her in inappropriate ways. Affidavit of Donna M. McGuire at ¶ 8. On one occasion in April of 1994, Sandy allegedly tried to grab and kiss Ms. McGuire. In the same incident, he also allegedly tried throw her on the floor and told her he wanted to "make her pregnant." McGuire Dep. at 57–61. According to Ms. McGuire, the inappropriate comments and touching increased in August of 1994. She said that she began to feel nervous and "ill" whenever Sandy was around and that she altered her conduct so that she was never in a room alone with Sandy. According to Ms. McGuire, she "dreaded the thought of having to keep away from Sandy while he was in the facility." Affidavit of Donna M. McGuire at ¶ 12.

In August of 1994, Ms. McGuire reported Sandy's behavior to the Executive Director of the VVCC, Mr. John Plichta. On April 10, 1995, Plichta notified Mr. Michael Fries, then a member of the VVCC Board of Trustees, of the complaints. Mr. Fries then notified the Secretary of the Administration, Michael E. Thomas. Subsequently, Michael Thomas informed Walter Sanford by letter dated April 14, 1995, that his son, Sandy, was no longer permitted on the VVCC's property.

Ms. McGuire claims that Walter Sanford and other members of the Board retaliated against her in violation of Title VII after receiving the letter from Thomas. First, she alleges that a promotion the Board previously had granted was revoked following her complaint. In January 1995, Ms. McGuire's job title was changed from Executive Secretary Senior to Assistant Administrator for the Board of Trustees. The change in title did not result in a change in salary. The Board of Trustees reassigned Ms. McGuire the title of Executive Secretary Senior on June 29, 1995.

The Commonwealth claims that the change in job title was merely to accommodate the Board's perceived need for Ms. McGuire to be in an administrative capacity to view medical files. Ms. McGuire had been viewing medical files as part of her job as Executive Secretary Senior. However, an incorrect legal opinion indicated that Ms. McGuire had to be in management, rather than a secretary, to do so in compliance with the Virginia Code. As it turned out, Ms. McGuire legally could not access the files no matter her title was. According to the Commonwealth, since the legal opinion was in error, Ms. McGuire was restored to her original job title, again without any change in salary.

Second, McGuire alleges that the duties of acting Executive Director were stripped from her in retaliation for her complaint. McGuire Dep. at 84–85. On December 2, 1994, Mr. Plichta resigned as Executive Director of the VVCC. Mr. Plichta left the VVCC on April 3, 1995. Thereafter, Ms. McGuire assumed the duties of Executive Director, pending the hiring of a new Executive Director. Ms. McGuire contends that these duties were taken away in retaliation for her claims against Sandy Sanford.

Third, McGuire alleges that Mr. Sanford retaliated against her by assigning her addi-

tional duties intended to harass and intimidate her. Specifically, she contends that Mr. Sanford began to request that she perform additional tasks at work, thereby limiting her ability to complete her assigned duties. McGuire alleges that Sanford would call her up to ten times a day and send her memoranda requesting her to perform varying tasks. McGuire Dep. at 85. She also asserts that he requested that she research the management contract, Affidavit of Donna M. McGuire at ¶ 16, and conduct an inventory of the facility, Affidavit of Donna M. McGuire at ¶ 20. McGuire had never performed either of these functions before.

Finally, McGuire alleges that members of the Board began to make her "life miserable" after her complaint. She asserts that they criticized her for taking the matters "out of house" and to the Secretary of Administration. She also claims that they became withdrawn from her and treated her abruptly. McGuire Dep. at 74–76.

Ms. McGuire filed this action on August 22, 1996. She amended her complaint on February 26, 1997. In Count I of her amended complaint, she alleges sexual harassment under Title VII, and she seeks relief for assault and battery under Virginia common law. In Count II of her complaint, she seeks relief for retaliation in violation of Title VII. Ms. McGuire initially brought this complaint against Mr. Sanford as well as the Commonwealth, but this court granted Mr. Sanford's motion to dismiss on June 23, 1997.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and

draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where a nonmoving party fails to establish an essential element of its case, all other facts are rendered immaterial, and entry of summary judgment is required as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Assault and Battery

The state law claim of assault and battery is barred by the doctrine of sovereign immunity. The Eleventh Amendment protects Virginia from being sued for tort recovery by private parties in federal court. There are two manners by which a plaintiff can overcome the state's Eleventh Amendment immunity. First, Congress may expressly abrogate the immunity. There is no allegation on the part of the plaintiff that Congress authorized this suit. Second, and more germane to this matter, the Commonwealth may expressly authorize the claim, thus waiving its immunity. *McConnell v. Adams*, 829 F.2d 1319, 1328–29 (4th Cir.1987), *cert. denied sub nom. Kilgore v. Virginia ex rel State Bd. of Elections*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988).

■ The Commonwealth of Virginia has not expressly waived its sovereign immunity in this case. Waiver of Eleventh Amendment immunity will be found only where it is expressly stated, or where it is overwhelmingly implied from the text of the statute. *See Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662, (1974). The most pertinent Virginia statute on the issue of waiver is the Virginia Tort Claims Act. Va.Code § 8.01–195.1 *et seq.* The Virginia Tort Claims Act permits claims against the commonwealth in state court, but it does not waive the Commonwealth's Eleventh

Amendment immunity. As the Fourth Circuit held in *McConnell*, the Virginia Tort Claims Act does not express the clear legislative intent necessary to waive Eleventh Amendment immunity. 829 F.2d at 1329.

Even if the Virginia Tort Claims Act were viewed to be a limited waiver of Eleventh Amendment immunity in this matter, plaintiff has failed to comply with the strict notice requirements in the statute. The Tort Claims Act provides that a claim "shall be forever barred" unless the plaintiff files a notice of claim with the Commonwealth within one year of the accrual of the cause of action. Va.Code § 8.01–195.6. Plaintiff admits that she failed to make such a filing within the time period. In fact, Ms. McGuire never made such a filing, even beyond the one-year limitations period. McGuire Dep. at 73. Plaintiff has failed to allege any other Virginia statute which would constitute a waiver of sovereign immunity in this situation.

■ Finally, plaintiff argues that sovereign immunity is inapplicable to the case at bar because the matter involves the intentional torts of assault and battery. Plaintiff claims that only simple acts of negligence are protected under Virginia's doctrine of sovereign immunity. To support its proposition, plaintiff cites *Burnham v. West*, 681 F.Supp. 1160 (E.D.Va.1987) and *Coppage v. Mann*, 906 F.Supp. 1025 (E.D.Va.1995). These cases stand for the proposition that state employees benefit from sovereign immunity only to the extent of negligent conduct within the scope of their employment. These cases are inapposite in this issue because they involve claims against individuals, rather than claims against the Commonwealth itself. The matter at bar involves the Commonwealth, not one of its employees. Plaintiff has indicated no cases, nor have I been able to find any, which limit the Commonwealth's sovereign immunity to acts of negligence. As the Virginia Supreme Court stated in *James v. Jane*, "[i]t is proper that a distinction be made between the state, whose immunity is absolute unless waived, and the employees and officials of the state, whose immunity is qualified, depending upon the function they perform and the manner of

performance." 221 Va. 43, 282 S.E.2d 864, 869 (1980).

For the foregoing reasons, plaintiffs motion for summary judgment regarding the claim of assault and battery in Count I of the complaint is granted.

### C. Sexual Harassment

Defendant's motion for judgment on the claim of sexual harassment pursuant to Title VII of the United States Code is denied. Plaintiff timely filed a charge with the EEOC, and the allegations in her complaint present facts sufficient to support a finding of hostile work environment sexual discrimination.

### 1. Timeliness of Charge
#### a. Applicable Time Period

■ Defendant argues that plaintiff failed to timely file charge with the Equal Employment Opportunity Commission. Title VII requires a plaintiff to file a charge of discriminatory conduct with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred ... [but, if] ... the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed ... within three hundred days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e)(1).

Plaintiff contends that this court should apply the three hundred day limitations period, but she fails to offer any rationale for applying the extended period. As the statute clearly states, plaintiff can only take advantage of the three hundred day period if she files a claim with a state agency authorized to provide or seek relief from the alleged unlawful employment practice. Plaintiff does not allege that she filed such a claim. Rather, plaintiff seems to argue that the three hundred day limitation applies to all claims of sexual harassment filed in Virginia, but she offers no support for this proposition.

Perhaps plaintiff is contending that the Virginia Human Rights Act, Va.Code Ann. § 2.1–718(A), which creates the Council on

Human Rights, constitutes such an agency under Title VII. The Council is given the authority to investigate and make findings and recommendations regarding complaints of discrimination. *Id.* § 2.1–720(7). It does not have the power, however, to grant or seek the relief described in 42 U.S.C. § 2000e–5(e). Consequently, a court in this district has held that the Virginia Human Rights Act does not create a state agency falling under similar exceptions of Title VII. *Dorsey v. Duff's Motel, Inc.,* 878 F.Supp. 869 (W.D.Va.1995).

In any event, there is no evidence that Ms. McGuire filed a charge under the Virginia Human Rights Act, nor has she invoked the jurisdiction of the Council on Human Rights. Thus, even if the Council was a qualifying agency under Title VII, the plaintiff has taken no steps to avail herself of the three hundred day limitations period. Therefore, the one hundred and eighty day limitations period applies to the matter at bar.

### b. Compliance with 180 Day Period

■ Defendant contends that plaintiff did not file her charge with the EEOC within the one hundred and eighty day period. Plaintiff filed her charge with the EEOC on June 28, 1995. Defendant alleges that the last incident of sexual harassment, if there was any, occurred in April of 1994. In April of 1994, Sandy Sanford allegedly grabbed plaintiff around the hips, attempted to throw her on the ground, and told her that he wanted to "make her pregnant." Thus, according to the defendant, the plaintiff's filing with the EEOC came more than one year after the last alleged unlawful employment practice.

Plaintiff alleges that acts of sexual harassment continued until the Spring of 1995. In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied,* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). I find that the alleged facts, and reasonable inferences they permit, indicate that the inappropriate conduct continued until the Spring of 1995.

First, Michael Little, an administrator at the VVCC, states that on March 13, 1995 he observed Sandy approach Ms. McGuire from the rear, place his hands on her shoulders, and tell her that he loved her. Second, Sandy was not barred from the VVCC premises until April 14, 1995. It reasonably can be inferred from the record that the offensive conduct continued during any visits until that time. Finally, plaintiff contends that she was forced to alter her work routine to avoid being alone with Sandy. An environment which required Ms. McGuire to alter her routine to avoid being alone with Sandy could constitute a hostile work environment. Thus, Ms. McGuire's altered routine permits the inference of a hostile work environment whenever Sandy visited the VVCC. As noted above, such altered conduct could have existed until Sandy was barred from the VVCC premises by the April 14, 1995 letter.

The defendant's attempt to cut the harassment off as of the most aggravating act of April 19, 1994 must fail. There is sufficient evidence that the harassment continued until the Spring of 1995. As mentioned, the plaintiff filed her EEOC charge on June 28, 1995. Thus, Ms. McGuire timely filed her EEOC charge.

■ Additionally, where conduct falls within the limitations period, conduct falling outside the charge-filing period may be litigated under the continuing violation doctrine. As the Fifth Circuit observed in *Abrams v. Baylor College of Medicine,* "[w]here the unlawful employment manifests itself over time, rather than as a series of discrete acts, the violation may be found to be a continuing one that 'relieves a plaintiff who makes such a claim from the burden of proving that the entire violation occurred within the actionable period.' " 805 F.2d 528, 532–33 (5th Cir.1986) (quoting *Berry v. Bd. of Supervisors,* 715 F.2d 971, 979 (5th Cir.1983)). I find that there is sufficient evidence for a jury to find that the alleged acts of harassment constitute a continuing harassment, rather than discrete acts. Also, the acts outside of the limitations period contribute to the cumulative effect producing plaintiff's stress during the period covered by the statute of limitations. Finally, evidence outside the limitations period is relevant to prove

defendant's intent, plan, scheme, or design. Therefore, even the acts which occurred outside of the one hundred and eighty day limitations period remain ripe for adjudication.

### 2. Sufficiency of Hostile Work Environment Sexual Harassment Claim

As the Supreme Court held in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), an employer's liability for discrimination under Title VII includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). For this "hostile work environment" harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." 477 U.S. at 67, 106 S.Ct. at 2405 (citation omitted). In Count I of her amended complaint, plaintiff alleges this type of hostile work environment sexual harassment.

■ To establish a *prima facie* sexual harassment case, the plaintiff must prove:
> (1) that the conduct in question was unwelcome;
> (2) that the harassment was based on sex;
> (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and
> (4) that some basis exists for imputing liability to the employer.

*Spicer v. Commonwealth of Virginia, Dep't of Corrections*, 66 F.3d 705, 710 (4th Cir. 1995). Defendant does not contest the first three elements of this test, however, it asserts that plaintiff failed to meet the fourth prong of this test.

■ The Commonwealth argues that there is no basis to impute liability for the actions of Sandy Sanford to the Commonwealth. Defendant contends that Sandy was merely a guest at the VVCC, and not an employee. Since Sandy was never an employee or a volunteer of the VVCC, defendant argues that the VVCC cannot be held liable for his actions. Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 9–10. Plaintiff counters by arguing that

the VVCC, through its agent Walter Sanford, was liable for the actions of Sandy Sanford. Plaintiff's Memorandum in Opposition to Motion For Summary Judgment at 18–19. Plaintiff also argues that the VVCC is liable for failing to stop sexually harassing conduct by nonemployees on its premises. Plaintiff's Memorandum in Opposition to Motion For Summary Judgment at 17–18. In my opinion, both of plaintiff's theories present valid means of imputing Title VII liability to an employer in hostile work environment sexual harassment cases.

■ An employer may be held liable for an employee's harassing behavior if the employer had actual or constructive knowledge of the hostile working environment and "took no prompt and adequate remedial action." *Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir.1987). In determining whether an employee's conduct is imputed to the employer, the Supreme Court instructed lower courts to look to traditional agency principles. *Meritor Sav. Bank*, 477 U.S. at 72, 106 S.Ct. at 2408.

In a summary judgment motion, I am required to view the facts in the light most favorable to plaintiff. I find that there is a sufficient factual issue as to whether or not Walter Sanford was acting within the scope of his duties as a Board member when he brought Sandy to the VVCC facilities. If he was acting within the scope of his duties as a Board member, then he was an agent of the VVCC and the Commonwealth. Mr. Sanford is capable of harassment through a third person or instrumentality such as his son Sandy, and the Commonwealth is potentially liable through a person or instrumentality under the control of one of its agents. Therefore, the Commonwealth potentially is liable for the actions of Sandy Sanford in allegedly creating a hostile work environment.

There is sufficient evidence in the record for the fact finder to conclude that the Commonwealth had actual or constructive knowledge of Sandy's harassing behavior. The former Executive Director, John Plichta, knew of Sandy's actions by August of 1994 at the latest. That is when he specifically dis-

cussed the problem with Ms. McGuire. Thus, it can be inferred that the VVCC had actual knowledge of Sandy's conduct no later than August of 1994, and as an agency of the Commonwealth, the VVCC's knowledge can be imputed to defendant. The Commonwealth took remedial action on April 14, 1995, when Sandy was banned from the VVCC's premises. Thus, a rational trier of fact could determine that the Commonwealth failed to take prompt and adequate remedial action. As is clear from its action on April 15, 1995, the Commonwealth at all times had the power to control Mr. Sanford and prevent him from bringing Sandy to the VVCC facilities.

Additionally, employer liability for a hostile work environment has been extended to situations in which the harassing conduct comes from nonemployees on the employer's premises. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir.1989) (triable issue of whether employer failed to take prompt remedial action in response to complaints of sexual harassment, including harassment by employee of an independent contractor); *Llewellyn v. Celanese Corp.*, 693 F.Supp. 369 (W.D.N.C.1988) (employer liable where he failed to take prompt and adequate remedial action against sexual harassment, including harassment by customer); *EEOC Guidelines on Sexual Harassment*, 29 C.F.R. § 1604.11(e) (1996). The test for employer liability is the same as where an actual employee was involved. The *EEOC Guidelines* state that an employer may be liable if he had actual or constructive knowledge of the hostile working environment and "fail[ed] to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e). According to the *EEOC Guidelines* another key consideration is the employer's ability to control the nonemployee. While the *EEOC Guidelines* are not binding law, the Supreme Court has recognized that they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank*, 477 U.S. at 65, 106 S.Ct. at 2404 (citations omitted).

I find that a rational trier of fact could hold the VVCC liable for not stopping Sandy's sexually harassing conduct on its premises. The record indicates that the residents and staff of the VVCC, the Executive Director of the VVCC, and members of the VVCC Board were aware of Sandy's harassing conduct towards Ms. McGuire. As noted, this knowledge can be imputed to the Commonwealth under traditional agency principles. It is also undisputed that the Commonwealth had the authority to control Sandy Sanford. That is in fact what they did with their April 14, 1995 letter to Walter Sanford.

Thus, the Commonwealth potentially could be liable under either of plaintiff's theories. First, the Commonwealth could be liable because it had knowledge of and failed to rectify harassing behavior by the agent of its employee Walter Sanford. Second, the Commonwealth could be liable for the actions of nonemployees on its premises where it had knowledge of the conduct and did not promptly take corrective action.

 Accordingly, the plaintiff has met their initial burden of presenting a *prima facie* case under the four part test enunciated in *Spicer v. Commonwealth of Virginia, Dep't of Corrections*, 66 F.3d 705, 710 (4th Cir.1995). Once the plaintiff meets this initial burden, the defendant may rebut the inference of hostile environment discrimination by showing that "either ... the events did not take place, ... they were isolated or genuinely trivial[,] ... [the defendant took prompt] remedial action reasonably calculated to end the harassment," or the defendant was unaware of the harassment. *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983). Defendant has not attempted to show any of the above factors. Therefore, the defendant's motion for summary judgment on the sexual harassment claim of Count I is denied.

### D. Retaliation

In *Ross v. Communications Satellite Corp.*, the Fourth Circuit found that the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny applies to Title VII retaliation cases. 759 F.2d 355, 365 (4th Cir.1985). The plaintiff must first establish a *prima facie* case of retaliation by showing all of the following elements:

(1) she engaged in protected activity;

(2) the employer took adverse employment action against her; and

(3) "a causal connection exists between the protected activity and the adverse action." *Id*

If the plaintiff establishes her *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of retaliation by proffering a legitimate, nondiscrimi-. natory reason for his action. *See id.* If the defendant articulates such a reason, the burden of production shifts back to the plaintiff to demonstrate that the reason is a pretext for retaliation. *See id.*

With this understanding of the law, I will look at the acts plaintiff claims were in retaliation for her complaint against Sandy Sanford's conduct. I have reviewed plaintiff's complaint and the evidence she has offered in opposition to the pending motion. There appear to be four main groups of conduct which plaintiff claims were in retaliation for her complaint against Sandy Sanford:

(1) The Board of Trustees reverted plaintiff's title from Assistant Administrator back to Executive Secretary Senior;

(2) The Board revoked her duties as acting Executive Director;

(3) Plaintiff was assigned additional work intended to harass her, including difficult projects with unreasonable deadlines; and

(4) Board members altered their attitudes towards the plaintiff.

I will address these groups in turn.

### 1. Changing Plaintiff's Title Back to Executive Secretary Senior

The defendants must prevail on this issue because defendant has offered an unrebutted nondiscriminatory explanation for the change in title. On January 19, 1995, plaintiff's title was changed from Executive Secretary Senior to Assistant Administrator for the Board of Trustees. On June 29, 1995, the Board reverted her title to Executive Secretary Senior. In her amended complaint, plaintiff alleges that the Board's action constituted retaliation for her complaint about Sandy Sanford.

The Commonwealth has proffered a nondiscriminatory explanation for the Board's action. The original change in title was made to allow Ms. McGuire to access the patient's medical files. The Board had received an erroneous legal opinion which indicated that only employees in management positions could access medical records. Thus, the Board changed Ms. McGuire's title to raise her from a secretarial level employee to a management level employee. There was no change in her salary based on this change in title. In June, the Board learned that not even management employees could access patient's medical records. Thus, it returned Ms. McGuire to her previous title. Again, there was no change in salary.

Where the defendant articulates a nondiscriminatory reason for the alleged retaliation, the burden of production shifts back to the plaintiff to demonstrate that the reason is a pretext for unlawful discrimination. *See Ross,* 759 F.2d at 365. Plaintiff has made no such showing. Plaintiff appears to rely on the fact that the Board had knowledge of Ms. McGuire's complaint when it changed her title back to Executive Secretary Senior, and that the return to Executive Secretary Senior occurred after her complaint about Sandy Sanford. A showing of knowledge and temporal order is sufficient to establish a prima facie case. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) ("Appellant's proof of causal connection between the protected activity and her discharge essentially was that she was fired after her employer became aware that she had filed a discrimination charge."). This is insufficient to rebut the defendant's legitimate, nondiscriminatory explanation for the change in title. *See id.* (even though plaintiff made out a *prima facie* case, temporal evidence was insufficient to overcome defendant's legitimate nondiscriminatory justification for the discharge); *Hughes v. Bedsole,* 48 F.3d 1376, 1387 (4th Cir.1995) ("mere knowledge on the part of an employer that an employee ... has filed a discrimination charge is not sufficient evidence of retaliation...."), *cert. denied,* 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995); *see also Wrenn v. Ledbetter,* 697 F.Supp. 483 (N.D.Ga.1988) (granting sum-

mary judgment where the only evidence plaintiff used to rebut a legitimate nondiscriminatory justification for the alleged retaliatory action was the chronology of the events), *aff'd*, 880 F.2d 420 (11th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990). I conclude that the plaintiff has failed to produce evidence to create a triable issue of fact as to whether or not her complaint against Sandy Sanford was a substantial or motivating factor in the VVCC Board's decision to return her· to the title of Executive Secretary Senior.

I specifically have not determined whether or not plaintiff set forth a *prima facie* case of retaliation with regard to the change in title. Rather, I have merely decided that if plaintiff has set forth a *prima facie* case, it has been countered successfully by the· defendant's unrebutted nondiscriminatory explanation for the change in title.

**2. Revoking Duties As Acting Executive Director**

▪ In December of 1994, the Executive Director of the VVCC, Mr. John Plichta, tendered his resignation. He resigned effective April 3, 1995. On January 19, 1995, at the same time her title was initially changed, Ms. McGuire was notified that she would also assume the duties of the Executive Director in his absence. The Board instructed Mr. Plichta to prepare for the orderly transition of duties to Ms. McGuire until a successor for Mr. Plichta was found.

Ms. McGuire alleges that she performed many of the Executive Director's tasks beginning on April 3, 1995, when Mr. Plichta left the VVCC. In the summer of 1995, the Board sought and found a replacement for Mr. Plichta. Ms. McGuire alleges that the Board's decision to fill the Executive Director's position was in retaliation for her complaint against Sandy Sanford. McGuire Dep. at 84–85.

Plaintiff has set forth no evidence that the decision by the Board to search for and hire a replacement for Mr. Plichta was retaliatory. "[T]he nonmoving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon the bald assertions of [her] pleadings.... [T]he

evidence must create a fair doubt; wholly speculative assertions will not suffice." *Ross*, 759 F.2d at 364 (quotations omitted) (citations omitted). I find that the record taken as a whole would not permit a rational trier of fact to find that "a causal connection exists between the protected activity and the adverse action." *Id.* at 365. As such, plaintiff has failed to establish a *prima facie* case of retaliation with respect to the claim that the Board stripped her of her duties as acting Executive Director.

**3. Assignment Of Additional Work intended to Harass Plaintiff**

Plaintiff alleges that she was assigned extra duties intended to harass and intimidate her in retaliation for her complaint about Sandy Sanford. She alleges that as of April 3, 1995 Mr. Sanford began to make increased demands on her. Affidavit of Donna M. McGuire at ¶ 21. According to Ms. McGuire, Mr. Sanford would call her up to ten times a day and send her memoranda requesting her to perform certain tasks. She also asserts that he requested that she research the management contract and conduct an inventory of the facility, two tasks which she never before had been required to do.

▪ These arguments fail for one of two reasons. First, the conduct in question could not have been in retaliation for her complaint because the Board did not have knowledge of her complaint when the conduct began. According to Ms. McGuire, Mr. Sanford began making increased demands of her on April 3, 1995. The uncontroverted facts show that Mr. Sanford did not become aware of her complaint until April 14, 1995. Therefore, to the extent the retaliatory conduct commenced before April 14, 1995, it cannot be the basis for a retaliation claim.

▪ Second, the alleged · increase in duties and responsibilities was in conjunction with plaintiff's assumption of the duties and responsibilities of the Executive Director. April 3, 1995 is the day Mr. Plichta left the VVCC and the day Ms. McGuire asserts the additional demands from Mr. Sanford began. Defendant argues the increased requests upon Ms. McGuire resulted from Plichta's

resignation and plaintiff's assumption of his duties, not any alleged retaliation. Thus, a legitimate nonretaliatory justification for the increased workload is that it was necessitated by the resignation of Mr. Plichta. Since a nonretaliatory justification has been advanced for the conduct in question, it becomes the plaintiff's burden to demonstrate that the nonretaliatory justification is a mere pretext.

I find that plaintiff has not put forward any evidence that supports such a conclusion. Again, I must state that "bare assertions, without more, are not enough to withstand a motion for summary judgment and a mere showing that an employer knew of a complaint when it took an employment action is not enough to show retaliation." *Bartges v. Univ. of North Carolina at Charlotte*, 908 F.Supp. 1312, 1331 (W.D.N.C.1995), *aff'd*, 94 F.3d 641 (4th Cir.1996). Plaintiff again seems to rely on her assertions and the fact that some of these events occurred after the letter of April 14, 1995. These are insufficient to overcome the evidence put forward by defendant that any additional duties placed upon Ms. McGuire resulted from her temporary tenure as acting Executive Director. Thus, I conclude that the plaintiff has failed to produce evidence creating a triable issue of fact as to whether or not her complaint against Sandy Sanford was a substantial or motivating factor in the VVCC Board's decision to assign her additional duties after April 3, 1995.

Again, I specifically have not determined whether or not plaintiff has set forth a *prima facie* case of retaliation. I have only decided that if plaintiff has set forth a *prima facie* case, it has been countered successfully by an unrebutted nondiscriminatory explanation.

#### 4. Board Members Altered Their Attitudes Towards the Plaintiff

Plaintiff alleges that after they were notified of her complaint against Sandy Sanford, members of the Board of Trustees retaliated against her. Specifically, she alleges that several members of the Board criticized her for taking the matter outside of the VVCC to the Secretary of Administration. She also alleges that they became withdrawn and were abrupt with her.

Defendant's prevail on this allegation because the actions of the Board members do not amount to adverse employment action. "Personality conflicts at work are not equivalent to discrimination or retaliation, even when such conflicts generate antipathy and make an individual's position more difficult." *Moore v. Carlucci*, 1988 WL 17615, at *10 (N.D.Ill.1988), *aff'd*, 893 F.2d 1337 (7th Cir.1989). Also, snubs and unjust criticisms do not amount to retaliatory conduct. *Miller v. Aluminum Co. of America*, 679 F.Supp. 495, 502 (W.D.Pa.), *aff'd*, 856 F.2d 184 (3rd Cir.1988). The allegations of misconduct by the members of the Board amount to no more than such snubs, unjust criticism and personality conflict. As the *Miller* court stated, "the law does not provide a remedy for all improper behavior.... We cannot expect, let alone obligate, [plaintiff's] supervisor's to act cordially toward one who had sued them." 679 F.Supp. at 505. Thus, plaintiff has failed to establish a *prima facie* retaliation claim regarding the alleged conduct of the Board members.

For the foregoing reasons, plaintiff's claims of retaliation fail and defendant's motion for summary judgment on Count II of plaintiff's amended complaint is granted.

#### E. Commonwealth's Liability as McGuire's Employer

In its motion for summary judgment, defendant contends that plaintiff is an employee of the VVCC and not the Commonwealth. Thus, it contends that the VVCC, and not the Commonwealth, is the only entity which can be held liable to plaintiff under Title VII. Defendant's motion is denied.

Defendant argues that the relationship between the VVCC and the Commonwealth is much like that of a parent and subsidiary corporation. Therefore, according to the argument, the parent (Commonwealth) would not be held liable for the actions of the subsidiary (VVCC) unless it exercised complete dominion over the subsidiary. *See Johnson v. Flowers Indus.*, 814 F.2d 978, 980 (4th Cir.1987). Defendant asserts that the

VVCC, as an independent agency, operates freely of the Commonwealth.

Defendant's argument is unpersuasive for two reasons. First, defendant indicates no authority applying corporations law by analogy to a situation involving a state government and one of its agencies. Likewise, I have been unable to find support for such a proposition. Second, whether or not corporations law is applied by analogy, there remains a factual issue as to whether McGuire is an employee of the Commonwealth. McGuire is paid by the Commonwealth. The Commonwealth funds a significant portion of the VVCC's activities. And in this matter, it was the Secretary of the Commonwealth, not a member of the VVCC Board who took remedial action to protect Ms. McGuire from continued exposure to Sandy Sanford. These facts are sufficient to create a triable issue of fact as to whether the Commonwealth is McGuire's employer. This would be the case even if I applied corporations law by analogy because the facts are sufficient to permit a finding that the Commonwealth exercised complete dominion over the VVCC.

For the foregoing reasons defendant's motion for summary judgment on the grounds that the Commonwealth is not plaintiff's employer is denied.

## CONCLUSION

For the aforementioned reasons, the motion is **GRANTED** with respect to the claims of assault and battery and retaliation. The motion is **DENIED** as to the claim of hostile work environment sexual harassment.

An order to this effect was entered on August 18, 1997.