**O. Floyd CHAPPELL, Plaintiff,**

v.

**SCHOOL BOARD OF THE CITY OF VIRGINIA BEACH, John Kalocay, James Troutman, and Anthony Arnold, Defendants.**

**Civil Action No. 2:97cv1202.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 20, 1998.

Scott M. Reed, Preston & Reed, P.L.C., Virginia Beach, VA, for Plaintiff.

Richard H. Matthews, Pender & Coward, P.C., Virginia Beach, VA, for Defendants.

## OPINION AND ORDER

PRINCE, United States Magistrate Judge.

This matter came before the Court on defendants' Motion for Summary Judgment. On June 29, 1998, the parties consented to have the case proceed before a United States Magistrate Judge. The Court heard oral argument on the Motion on June 29, 1998.

### Nature of the Case

This is a civil action under Title VII of the Civil Rights Act of 1964, and under 42 U.S.C. § 1983, by O. Floyd Chappell ("Chappell"), a former employee of the defendant School Board of the City of Virginia Beach ("School Board"), against the School Board and several of its individual employees.

### Material Facts

The following are undisputed background facts from the record in the case. Plaintiff, O. Floyd Chappell, was first employed by defendant School Board in 1992 in a construction inspection position titled "Clerk of the Works". (*See* Defendants' Exhibit 1, a job description for the position.) The individual defendants are also employed in various capacities by the School Board. Plaintiff is a male Caucasian, now approximately 60 years of age. Chappell filed an age discrimination claim with the Equal Employment Opportunity Commission ("EEOC"), on or about November 14, 1994, challenging the actions of his employer, the School Board of the City of Virginia Beach. Eventually, in October of 1996, the charge was dismissed by the Commission upon a finding of no cause. The plaintiff took no further action to pursue the matter.

Plaintiff had also sent a letter to the EEOC on or about November 13, 1995, listing twelve (12) incidents of adverse action that he stated had been taken against him, allegedly in retaliation for his having filed the previous age discrimination charge with the EEOC.[1] (Attached to Defendants' Exhibit 6, Plaintiff's Answers to Interrogatories, hereafter "the list".) However, a sworn retaliation charge was not filed with the EEOC until April 19, 1996. The acts of retaliation were alleged to have occurred at a time up to and including June 1, 1995.[2] (Exhibit 4.) The EEOC investigation into the retaliation claim was "unable to conclude that the information obtained established violations of the statute" and dismissed the charge, granting the plaintiff his required "Notice of Right to Sue". (Defendants' Exhibit 5.)

At this time, plaintiff is no longer employed by the School Board as a result of health problems. In September of 1996, plaintiff reported a knee injury to his employer. (Defendants' Exhibit 12.) He was cleared to return to work by Sheldon Cohen, M.D., shortly thereafter. (Defendants' Exhibit 13.) However, in October of 1996, plaintiff's physicians (John R. Patterson, M.D., Sheldon Cohen, M.D., and Arthur Wardell, M.D.), unanimously reported that due to his injury and the restrictions it placed upon his ability to squat, crawl, and climb, he could not return to his job as Clerk of the Works. (Defendants' Exhibit 16, Exhibit 17, Exhibit 18, Rich Aff.)

Plaintiff requested limited duty in November of 1996, at which point, he had not worked in nearly two months. The School Board searched all available jobs within the system to find a job that plaintiff could physically perform. (Rich.Aff.) Chappell was offered another job by the School Board (a custodial job), which he could physically perform, but he did not accept that offer. He was given a notice of his termination effective March 28, 1997, and took no administrative action to challenge that decision. (Rich Aff.)

---

1. These 12 items form the factual basis for the instant suit as well, and will be discussed in detail in the analysis portions of this Opinion.

2. The "Charge of Discrimination" form, however, listed in a box labeled "Date Discrimination Took Place", under "earliest": "06/01/95", and also under "Latest": "06/01/95". (Defendants' Exhibit 4.)

On December 29, 1997, plaintiff filed this complaint in federal court alleging discriminatory employment practices in violation of 42 U.S.C. § 2000e–3, and a deprivation of his Constitutional rights in violation of 42 U.S.C. § 1983.

### DISCUSSION
#### A. Standard of Review for Motions for Summary Judgment Under Rule 56(c)

Under Rule 56, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party, Chappell. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Rule 56 mandates summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Id.* at 324, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)).

 Courts must take special care in considering summary judgment in cases involving questions of motive, such as in this employment discrimination case. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.1987), *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364–65 (4th Cir.1985)(*overruled on other grounds by: Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). However, "[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is never an appropriate vehicle for resolution." *Ballinger*, 815 F.2d at 1005 (citations omitted). Where a plaintiff fails to set forth either a *prima facie* case of discrimination or a "genuine factual dispute over the employer's legitimate non-discriminatory explanation," a defendant may prevail on summary judgment. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316–17 (4th Cir.1993).

With these controlling principles in mind, the Court turns to the merits of the motion.

#### B. The claims

Count 1 of the complaint alleges that during the period between November 1994, and April 1996, the defendants intentionally engaged in unlawful discriminatory and differential employment practices against plaintiff solely on account of, and in retaliation for, his filing a charge of discrimination with the EEOC and otherwise engaging in activities to oppose unlawful employment discrimination in violation of the Act, 42 U.S.C. § 2000e–3. Count 2 relies upon the same facts in support of a claim that the individual defendants deprived the plaintiff of his constitutional rights, in violation of the Civil Rights Act, 42 U.S.C. § 1983.

## I. *Title VII Claim: Statute of Limitations*

The law requires a complaining party to file a charge with the EEOC within 180 days of the last act of discrimination. 42 U.S.C. § 2000e–5(e)(1). This time period is extended to 300 days when the claim is initially filed with a State or local "deferral agency". *Id.* The Court need not decide here whether Virginia has a qualifying deferral agency, because the claim here does not satisfy the 300 day deadline.

The last act complained of in the plaintiff's list was a "Late June 1995" employment evaluation which the plaintiff received. (Defendants' Exhibit 6, item # 12.) In support of this motion, the defendants have submitted evidence that the evaluation in question actually occurred on May 25, 1995. (*See* Troutman Aff.; Exhibit B thereto, copy of evaluation.) The plaintiff has offered no contrary evidence or argument in response, and in deposition testimony, the plaintiff acknowledged that he could not say whether the evaluation occurred on May 25, 1995, or at some other time. (Chappell Dep., p. 61, Exhibit A to defendants' rebuttal memorandum.) This record does not create a genuine dispute of material fact regarding the last act of alleged discrimination, which the Court finds occurred on May 25, 1995.

■ Plaintiff argues that his complaint was timely, by stating that a letter dated November 13, 1995, sent by Chappell to the EEOC, constitutes a valid charge so as to toll the running of the statutory period. However, the law is clear that the filing of a sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge. The statute clearly states that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). This requirement of a sworn statement to complete the filing of a formal charge was recognized in *Balazs v. Liebenthal,* 32 F.3d 151 (4th Cir.1994)(*citing, Hinton v. C & S/Sovran Corporation,* 57 F.E.P. Cases (BNA) 337, 1991 WL 325642 (E.D.Va.1991)) (unsworn letter from plaintiff's lawyer to EEOC within 180 days of his discharge was not cured by sworn charge executed by plaintiff after 180

days had elapsed); and *Austin v. Russell County School Board,* 53 F.E.P. Cases (BNA) 1749, 1990 WL 300259 (W.D.Va.1990) ("[t]he provisions of § 2000e–5(b) plainly and simply mandate that a charge be in writing and under oath"). Plaintiff did not file a sworn charge until April 19, 1996, which is not within 300 days of the last act of alleged discrimination.

■ To the extent that plaintiff's contentions on the timeliness issue touch upon an equitable tolling argument, the argument does not prevail. "Equitable tolling applies when the defendant attempts to mislead or deceive the plaintiff in order to conceal the existence of a cause of action." *Hinton,* 1991 WL 325642, *2, *citing, Lawson v. Burlington Industries,* 683 F.2d 862, 864 (4th Cir.1982). Plaintiff bears the burden of showing that he was mislead or deceived by the defendants, and that this misrepresentation resulted in an untimely charge. There is no such argument or supporting evidence in the case, and equitable tolling does not apply.

Because the plaintiff did not file with the EEOC within the statute of limitations, his Title VII claim fails as a matter of law.

## II. *Sufficiency of the Facts Alleged in Support of the Title VII Claim and the § 1983 claim.*

The Court agrees with the parties' contention that for the purposes of summary judgment, the analysis regarding the sufficiency of the factual allegations is the same for the Title VII claim, as the § 1983 claim. The Court reviews the sufficiency of the factual contentions offered in support of the claims and concludes that as an alternative ground for dismissal, the Title VII claim cannot withstand such scrutiny on the merits. The same analysis leads the Court to the inescapable conclusion that the § 1983 claim must also fail as a matter of law. With respect to both claims, the plaintiff has failed to meet the burden of demonstrating adverse employment action which would satisfy the *prima facie* case, and has not created a genuine issue regarding causation or pretext.

The applicable test for considering whether the plaintiff has established a claim of retaliation under Title VII, 42 U.S.C.

§ 2000e–3, relying on circumstantial evidence to establish the unlawful motive for employment action, follows the now familiar *McDonnell Douglas/Burdine,* burden shifting formula. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To prevail on his retaliation claim at trial, Chappell must show "(1) that [he] engaged in protected activity, (2) that [the School Board] took adverse employment action against [him], and (3) that a causal connection existed between the protected activity and the adverse action." *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989)(*citing Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985)(later abrogated in some respects by other case law)). Once Chappell establishes his *prima facie* case, the defendant can rebut it with proof of some legitimate, non-retaliatory reason for the adverse action. *Id.* The employer is not required to prove the absence of a retaliatory motive, but only to raise a "genuine issue of fact," *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094, as to whether retaliation for protected activity occurred. The burden of proof will then shift to Chappell to establish at trial by a preponderance of the evidence that the proffered reasons are pretextual. *Id.*

At this procedural stage, the Court takes the facts as alleged by the plaintiff to be true. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Plaintiff need not prove his allegations by a preponderance of the evidence at this time, but he must produce evidence which is sufficient to establish a genuine issue of fact on each element of his case. Even accepting Chappell's allegations, the challenged actions of his employer and supervisors do not rise to the level of severity necessary to state a claim of unlawful retaliation under Title VII. Although he engaged in protected activity, Chappell was not subject to adverse employment action, nor can he establish a causal connection between any allegedly adverse employment activity, and the filing of his EEOC complaint. Finally, the defendant has offered age-neutral, non-retaliatory explanations for each of the challenged actions, which have not been rebutted with evidence that they are pretextual.

*Plaintiff's Factual Allegations*

In the list detailing his complaints (attached to Defendants' Exhibit 6, and paraphrased here), Chappell makes the following allegations, and the defendant responds by pointing to plaintiff's deposition testimony and the exhibits offered in support of summary judgment. Both the plaintiff's allegations and the facts relied upon in the defendants' responses are summarized below.

1. Following respiratory surgery, plaintiff was still required to work at job sites where smoke, heat, and contaminants existed in the environment. Plaintiff alleges that he could have been transferred to a less hazardous construction site. In deposition, plaintiff admitted, that because this activity occurred before he even filed his original EEOC complaint, it could not be retaliation. "I don't think you could consider that retaliation." (Chappell Dep., p. 30.) Discussing this event, Chappell testified in deposition that it "happened on or about 8–15–94". The original complaint, for which Chappell alleges he was retaliated against, wasn't filed until November 14, 1994.

2. Plaintiff's supervisor questioned him about a time sheet ("accused me of falsifying three pay records and time sheets"). At deposition, plaintiff described the incident as one in which Mr. Troutman asked him if he'd taken a day off on a day which the time sheets reflected he had worked. Chappell showed him the time sheet, which actually reflected that he was on leave that day, and that was the end of the matter. "It spanned probably five minutes if that long." (Chappell Dep., p. 31.)

3. Plaintiff asked Mr. Arnold to give a list of school board members to his co-worker, Art Bain. Mr. Arnold wouldn't give it to Mr. Bain, so plaintiff got it from a Ms. Bischoff.

4. During staff meetings in late 1994, defendant Troutman, plaintiff's supervisor, made remarks about fewer confrontations, fewer hostilities, and a more professional work environment among the department. Plaintiff stated in deposition: "He seemed to be genuinely contrite. I took it to mean—he wasn't talking to me specifically, he was talking to all of us. Here again, this is probably one of those Tuesday morning staff meetings, and he said—it says right here, fewer confrontations, fewer hostilities, better work environment. I don't know if he used those words, but that's what he was saying and I took him to mean what he said, but apparently the statement wasn't for me." (Dep., p. 33.)

5./6. At a meeting with Mr. Kalocay, Chief Operations Officer it was suggested that plaintiff seek some counseling. Chappell was also told something to the effect of: "You know, you are going to get sued if you continue this path that you are on right now." (Dep., p. 34.) Plaintiff claims that Mr. Kalocay talked about slander, and that the suggestion regarding lawsuits was related to plaintiff's complaints about Mr. Troutman. (Dep., p. 37.) Defendant argues that no adverse job action resulted from this meeting, that Mr. Troutman merely made a sincere suggestion that Chappell seek some personal counselling, and that he take "a different tact toward his co-workers."

7. Plaintiff complains that he was subject to an "information blackout" in that he did not receive some documents which were "vital for the successful and timely completion of this job." However, Chappell states in deposition that the construction job at issue was completed on time and that he was complimented on the job by the Principal and Vice Principal. (Dep., p. 39.)

8. Plaintiff alleges that a coworker, Mr. Palacios, was assigned to plaintiff's job site in order to "commence a full time surveillance of [Chappell's] activities". Plaintiff says he observed Mr. Palacios looking at him from the top of the building on more than one occasion. (Dep., pp. 40–42.)

9. Plaintiff was denied payment for 10.25 hours of unauthorized overtime he worked on February 20–21, 1995. Plaintiff admits in deposition that he worked overtime many times during the relevant period and that he can't recall any other instances where he was denied compensation. (Dep., p. 46.) Chappell also admits that he did not know what the overtime policy was. (Dep., p. 45.) Overtime was required to be specifically requested and approved by a supervisor, and this work was not. (See, March 3, 1995, Memorandum, attached to Troutman affidavit.)

10. Plaintiff attended a court proceeding for the trial of a coworker who he had charged with assault. He was advised by memo that he had not followed the procedure for taking this time off from work. The March 3, 1995, Memo indicated that the time would be charged against Chappell's annual leave, and provided him with a copy of the relevant School Board Regulation explaining this policy. (See, Memorandum attached to Troutman affidavit.)

11. Plaintiff received another Memo notifying him that he had apparently taken unauthorized sick leave on April 24 and 25. Plaintiff had actually called Art Bain and been authorized to take the time off. The mistake was later clarified by Mr. Bain. (Dep., p. 53–57.) This resulted in no action other than the Memo. (Troutman Aff.)

12. Plaintiff complains that his 1994/1995 job evaluation "reflected many negative comments from Mr. Troutman about [his] job performance." Chappell's 1993 and 1994 evaluations reflected good work performance. The evaluation dated "5–25–95" was more critical, commenting: "Mr. Chappell would do well to change his attitude

towards his fellow employees." ("Employee Performance and Work Appraisal Form", attached to Troutman Aff.)

### Adverse Employment Action

The type of conduct which is sufficient to constitute adverse employment action generally rises to the level of "ultimate employment decisions". *See Page v. Bolger*, 645 F.2d 227 (4th Cir.1981); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir.1995)(cited by defendant), *see also e.g., Ward v. Johns Hopkins Univ.*, 861 F.Supp. 367, 377 (D.Md. 1994); *Lucas v. Cheney*, 821 F.Supp. 374, 375 (D.Md.1992).[3] The *Page* case is often cited in this Circuit as authority for this proposition.

> In defining what constitutes an adverse employment action, the Fourth Circuit observed, in *Page v. Bolger*, 645 F.2d 227 (4th Cir.), cert. denied, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981), that inquiries into whether there has been an employment action adversely affecting an employee have "consistently focused on the question of whether there has been discrimination in what could be characterized as ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 233.

*See Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822, 836 (D.Md.1994), aff'd, 77 F.3d 745, cert. denied, —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); *Caussade v. Brown*, 924 F.Supp. 693, 700–02 (D.Md. 1996), aff'd, 107 F.3d 865 (4th Cir.1997). *Scannell v. Bel Air Police Dept.*, 968 F.Supp. 1059, 1065 (D.Md.1997); *see contra, Howze v. VPI*, 901 F.Supp. 1091, 1097 (W.D.Va.1995)(declining to require an "ulti-

mate employment decision" in order to demonstrate "adverse employment action" in a retaliation case).

The *Scannell* Court (quoted above), applied a broader interpretation of "adverse employment action", finding that although there was not "ultimate employment action", the employee plaintiff satisfied the *prima facie* case where her employer "systematically and repeatedly ridiculed, insulted, and threatened her with tangible adverse action, i.e., reassignment, because of her protected activity." *Id.* at 1605. Although there is case law supporting the proposition that, on occasion, something less than an actual "ultimate employment action" can support a retaliatory discrimination claim, the law does not go so far as to allow the type of claim made here to stand. At most, actions which are significant steps along the way to ultimate employment action, or which invoke comparable harm, such as irreparable damage to the plaintiff's reputation or ability to perform his work, can potentially rise to actionable retaliation, but not the type of misunderstandings, personality conflicts, job performance evaluations, and purely administrative matters described here.

These allegations by Chappell fall well short of even the most liberal interpretation of the *prima facie* case requirement for "adverse employment action." Title VII of the Civil Rights Act of 1964 was not designed to redress personal grievances or purely job related workplace issues, and the anti-retaliation provision, 42 U.S.C. § 2000e–3, is not implicated here. At best, the actions relied upon as retaliation and reprisals are job performance related, with a pervasive undertone of mere personality conflict.

---

**3.** A parallel can be drawn between retaliatory conduct sufficient to constitute adverse employment action as ultimate employment decisions and "tangible employment action", and related activity, as is often examined in other discrimination contexts. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Compare Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993) ("A materially adverse change might be indicated by a termination of employ-

ment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"), with *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir.1994) (a "bruised ego" is not enough); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (6th Cir.1996) (demotion without change in pay, benefits, duties, or prestige insufficient) and *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994)(reassignment to more inconvenient job insufficient).

Job performance is widely recognized as a valid, non-discriminatory base for employment decisions. *See Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 960 (4th Cir.1996). "Without evidence of pretext for retaliation, this Court will not act as a 'super-personnel department that reexamines an entity's business decisions.'" *Beall v. Abbott Laboratories,* 130 F.3d 614, 620 (4th Cir.1997)(*citing Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)).

 Personality conflicts also do not provide a legal basis for a retaliation claim. *See McGuire v. Virginia,* 988 F.Supp. 980, 991 (W.D.Va.1997):

"Personality conflicts at work are not equivalent to discrimination or retaliation, even when such conflicts generate antipathy and make an individual's position more difficult." *Moore v. Carlucci,* 1988 WL 17615, at *10 (N.D.Ill.1988), aff'd, 893 F.2d 1337 (7th Cir.1989). Also, snubs and unjust criticisms do not amount to retaliatory conduct. *Miller v. Aluminum Co. of America,* 679 F.Supp. 495, 502 (W.D.Pa.), aff'd, 856 F.2d 184 (3rd Cir.1988). The allegations of misconduct by the [defendants] amount to no more than such snubs, unjust criticism and personality conflict. As the *Miller* court stated, "the law does not provide a remedy for all improper behavior.... We cannot expect, let alone obligate, [plaintiff's] supervisor's to act cordially toward one who had sued them." 679 F.Supp. at 505.

In *McGuire,* the alleged retaliatory adverse action consisted of the defendant supervisor's criticisms, and defendant becoming withdrawn and abrupt with the plaintiff. *Id.* at 991.

The "retaliatory" conduct alleged here, which is absent of any indication of a discriminatory animus, is *de minimis,* and inconsequential as a matter of law. The challenged conduct does not constitute adverse employment action. Accordingly, as plaintiff is unable to meet the burden of the *prima facie* case, summary judgment in favor of the defendant is appropriate.

*Causation*

 Briefly proceeding beyond this deficiency in the plaintiff's case, the Court notes that there is also no evidence of a causal nexus between Chappell's protected activity and any allegedly adverse employment action taken by the defendants. Chappell argues that he relies on circumstantial evidence to create the inference that the actions he challenges were caused by his prior age discrimination complaint. A plaintiff must establish that he would not have suffered an adverse employment action, but for the fact that he engaged in statutorily protected activity. *Moore v. Reese,* 817 F.Supp. 1290, 1299 (D.Md.1993.) Chappell cannot do that based on this record.

 The mere fact that plaintiff had filed an EEOC age discrimination complaint does not, in and of itself, create a reasonable inference that everything that happened after that point, which plaintiff did not like, was caused by the fact that he had filed his complaint. The fact that there is some correlation in time does not imply causation. Clearly, plaintiff has a subjective belief that he was retaliated against, but that alone is insufficient. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980); *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986). With no hint of evidence supporting the proposition, a reasonable factfinder could not draw the conclusion from this record that the allegedly adverse actions were taken in retaliation for the protected activity.

*Pretext*

 In addressing each of Chappell's twelve retaliation allegations, defendants respond that either: the plaintiff has admitted the insignificance of the event in deposition, or the event was benign and nondiscriminatory job related activity, rather than retaliatory adverse employment action. The defendants have submitted the sworn affidavits of James Troutman, John S. Kalocay, Anthony Arnold, and Jim Rich, each of which specifically address and refute the plaintiff's allegations of retaliation, often referring to clearly established written School Board policy. Although plaintiff

disputes that defendants have offered an adequate "adherence to policy" justification for every allegation, the Court finds that the defendants have addressed the allegations sufficiently by offering nondiscriminatory justifications, and therefore shifted the burden back to the plaintiff to demonstrate "that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent." *Brinkley–Obu v. Hughes Training Inc.*, 36 F.3d 336, 344 (4th Cir.1994)(*Citing, Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

At trial, the burden of persuasion would remain on the plaintiff, who may make the required showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[4] *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983). The employer's proffered reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At this procedural stage, if the plaintiff fails to evidence a genuine dispute of fact over the employer's nondiscriminatory reason, he has not satisfied his burden and the defendants may prevail as a matter of law.

Plaintiff has not presented sufficient evidence or argument that the proffered explanations are false, nor that they shelter some discriminatory animus. In addressing the pretext issue in his brief, plaintiff argues:

> This is a classic pretext case. The Board's management and supervisory staff, including specifically the individual defendants, knew that they could not discharge Chappell only because he claimed discrimination in an EEOC filing. They had to find another way to rid the Board of Chappell. When threats of a lawsuit and counselling failed, they escalated their efforts to discredit Chappell and his job performance, even to the extent of assigning a full-time employee to provide around-the-clock surveillance of Chappell. Upon these facts, a reasonable trier of fact may find the reasons preferred by the Board for its actions against Chappell are false and constitute pretext for unlawful retaliatory discrimination. Chappell has met his evidentiary burdens of production and established genuine issues of material facts which must be litigated and determined by a jury. The defendants are not entitled to summary judgment.

(Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment, p. 10). In the above quoted argument, the plaintiff has merely re-alleged the underlying allegations which constitute his retaliation claim and argued that simply because they happened, the employer's proffered explanation is pretextual. This argument is conclusory, not adequately supported by facts in the record, and plainly insufficient to create a factual dispute.

There is no evidence in the record that the School Board sought to "rid" themselves of employee Chappell. There is no evidence relating any of the challenged activity to retaliatory motivation designed to persuade the employee to leave. There is no evidence that "but for" the plaintiff's EEOC complaint, the School Board, and the individual defendants, would not have undertaken the challenged activity. The only evidence on the issue of Chappell's decision not to return to work for the School Board is that there came a point in time when his physical health, rather than some action of the defendants, prevented him from continuing his employment. Absent evidence of pretext, this cause of action cannot stand.

*CONCLUSION*

The plaintiff's Title VII claim is barred by the applicable statute of limitations. The Title VII claim, and the § 1983 claim, also fail to meet the burdens of the *prima facie* case in that they do not allege adverse employment action, sufficient to invoke the Act, nor do they present evidence of causation.

---

**4.** At summary judgment the plaintiff carries the burden of production, he must produce evidence sufficient to create a genuine factual question that the employer's proffered reason is pretextual. *See Ross,* 759 F.2d 355.

Finally, the plaintiff has not satisfied his burden to produce evidence from which a reasonable trier of fact could conclude that the defendants' proffered nondiscriminatory explanation is pretext for retaliatory animus. This failure to demonstrate pretext is also fatal to both the Title VII claim, and the § 1983 clam.

## ORDER

For the foregoing reasons, it is ORDERED that defendants' Motion for Summary Judgment, based on Fed.R.Civ.P. 56(c), be GRANTED.

The Clerk is DIRECTED to mail a copy of this Opinion and Order to all counsel of record.