UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EDITH N. BRACKMAN,
　　　　　*Plaintiff-Appellant,*

v.

FAUQUIER COUNTY, Virginia,
　　　　　*Defendant-Appellee.*

No. 02-1161

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-01-918-A)

Argued: February 24, 2003

Decided: July 9, 2003

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Seth Charles Berenzweig, ALBO & OBLON, L.L.P.,
Arlington, Virginia, for Appellant. David Patrick Corrigan, HAR-
MAN, CLAYTOR, CORRIGAN & WELLMAN, P.C., Richmond,
Virginia, for Appellee. **ON BRIEF:** David A. Oblon, ALBO &
OBLON, L.L.P., Arlington, Virginia, for Appellant. Jeremy D. Capps,
HARMAN, CLAYTOR, CORRIGAN & WELLMAN, P.C., Rich-
mond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Edith N. Brackman sued Fauquier County, Virginia (the County) in the U.S. District Court for the Eastern District of Virginia, asserting a retaliatory firing claim under Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The district court granted summary judgment in favor of the County. For the reasons that follow, we affirm.

I.

Because Brackman was the nonmovant in the summary judgment proceedings, we construe the facts in the light most favorable to her and draw all justifiable inferences in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Brackman began working for the County in 1986 as a Program Manager in the Park Recreation Department. In June 1994 she applied for and obtained the position of County Recycling Coordinator. Her position was placed under the County's Department of Solid Waste Management. (The record is not clear, but it appears that this department was later renamed the Department of Environmental Services.) Ellis Bingham was her immediate supervisor. In July 1996 Brackman applied for the position of Assistant Solid Waste Manager, and Bingham was responsible for selecting the new person for this position. When Bingham learned that Brackman had applied, he told her that she was not qualified because it was "not a job for a woman." Brackman was not selected for the position. Instead, Bingham placed Tim Bridges, a male employee with fewer qualifications than Brackman, in the position. Brackman and Bridges were the only applicants for the position. In October 1996 Brackman filed a complaint with the Equal Employment Opportunity Commission (the EEOC) against the County, claiming that her nonselection for the assistant manager's position was due to gender discrimination. The EEOC found in Brackman's

favor in November 1997 and specifically cited Bingham's statement to Brackman as a basis for its determination. The County never disciplined Bingham for his discriminatory conduct, nor was he required to attend training sessions or receive counseling concerning discrimination or retaliation against employees. In December 1997 Bingham went to the County Personnel Director seeking to have Brackman terminated; Bingham was told that he did not have sufficient grounds.

The County determined that it would provide Brackman with a new position in an effort to resolve her EEOC charge. In March 1998 Brackman and the County entered into a Conciliation Agreement to close out the discrimination charge. Under the Agreement, Brackman was reassigned to the Department of Support Services (later called General Services), where she headed a small recycling division that handled mostly white paper recycling. She was afforded a grade-23 position (the equivalent of the position given to Bridges), and she was promised that her personnel records would be purged of references to her EEOC complaint. As part of the Agreement, the County promised not to retaliate against Brackman for her successful EEOC charge. Phillip Farley, the head of the Department of Support Services, was told by the County Administrator that "the county would be better served if [Brackman] were in [his] division." Farley was "very pleased" about Brackman's arrival because "they had a real need" for her in Support Services. Bingham allegedly was opposed to Brackman's transfer out of his department to a position where she had separate recycling responsibilities of her own. The jobs that Brackman performed in her new position were distinct from the recycling tasks performed in Bingham's Department of Environmental Services, which dealt primarily with the County's landfill and recycling sites.

Once under the Department of Support Services, Brackman was informed that she would have to bring in revenues to keep her division afloat, including raising enough to fund the salary of her assistant, Heather Sewell. Brackman created programs and applied for various grants in order to raise revenues. Brackman and Sewell successfully developed an abandoned vehicle program and a confidential document destruction program; they also obtained grants and held an auction to raise revenues. In Fiscal Year 1999 Brackman's division exceeded its revenue goals and even hired a part-time assistant with money secured through grants. Sewell personally deposited the reve-

nues generated from the programs at the County treasurer's office. As early as 1998, however, Brackman learned that the revenues were not being properly deposited into her division's accounts but were instead going into the account of Bingham's Department of Environmental Services and were being recorded as revenue generated by that office. In the fall of 1999 Brackman discovered that the County's financial records indicated that her division had not raised *any* revenue for the prior fiscal year. Brackman met with County Budget Officer Marci Kotov in the fall of 1999 to address the problem. Brackman and Kotov tracked a year's worth of revenue deposits for Brackman's division and found that a number of deposits were inexplicably deposited into accounts for Bingham's department. Brackman met with County Treasurer Beth Ledgerton in early 2000 to address the revenue allocation problem; Brackman also informed County Budget Director Bryan Tippie of the issue. Neither Brackman nor the County offers a solid explanation for why revenues from Brackman's division were incorrectly deposited into another account. Kotov referred to it as a "mix up" following the transfer of Brackman's recycling operations from Environmental Services to Support Services.

On January 1, 2000, three new Board members took office on the five-member Board of Supervisors (the Board). On February 4, 2000, County Administrator Robert Lee submitted two proposed county budgets to the Board for the July 1, 2000, through June 30, 2001, budget year (Fiscal Year 2001, or FY 2001). Both included funding for Brackman's recycling position based on her budget request; both also included funding for recycling programs under the Department of Environmental Services. One budget included a tax increase for county residents, the other did not. Two of the Board's new members, Joseph Winkelman, the Vice-Chairman of the Board, and Ray Graham, the Chairman, were elected on platforms to cut spending, and both served on the Board's finance committee. According to Budget Director Tippie, Winkelman and Graham "were very emphatic about making adjustments to the budget, cutting the budget basically." Winkelman and Graham, who had not been around at the time of Brackman's EEOC complaint or the Conciliation Agreement, noticed that the County was operating two recycling programs (Brackman's and Bingham's) under two different departments. They were concerned that by having the recycling functions separated, the County was unnecessarily duplicating efforts. Winkelman requested an estimate

on the amount of money the County could save if the two recycling operations were combined. Winkelman learned of Brackman's earlier EEOC complaint and the resulting Conciliation Agreement only after he consulted County administrators about the possibility of consolidating the recycling operations. Winkelman determined that Brackman's earlier charges were "history" and concluded that fiscal responsibility required that the Board "eliminate the duplication and the overstaffing of this operation, we're going to combine them and we're going to do it the right way which is to say without discriminating any further."

In putting together a cost-savings estimate for the Board, Tippie asked Bingham to estimate what it would cost the Department of Environmental Services to assume the recycling functions of the Department of Support Services. At that time, the Department of Environmental Services handled approximately 95-98 percent of the County's recycling tonnage. Bingham estimated that it would cost approximately $56,000 for his department to assume the functions. Bingham testified that he came up with that number by figuring out "the functions [of Brackman's division] that [he] didn't have money to cover." Very little additional overhead was necessary to assume the extra responsibilities. Bingham testified that he did not know at the time he gave the estimate that the Board was thinking about cutting Brackman's position. Brackman's estimated expenditures for performing these same recycling functions was $161,985. Tippie thus advised the Board that it could save up to $100,000 if the recycling departments were combined. Tippie provided a memorandum to the Board which stated that "Ellis Bingham feels that the projected overall financial status of the Solid Waste Enterprise Fund [which funds his operations] can support such an adjustment [and] OMB concurs with his projections."

Based on the estimates provided to them, Winkelman and Graham proposed the elimination of the General Services recycling division as one of their budget cuts, and the full Board approved the measure. Of the $161,985 budgeted for Brackman's recycling division, $97,655 was moved to the Department of Environmental Services. According to Brackman, the County used flawed data to make decisions about how it would operate its recycling program in the most cost-effective way for the next year. But the FY 2001 budget data submitted to

County officials by Brackman herself showed *projected* revenues of $58,054. In fact, before the Board began exploring the possibility of consolidating recycling operations, the County Administrator had recommended that the Board adopt a budget that provided revenue projections in the amount of $57,000 for Brackman's division for FY 2001 and $43,000 for FY 2000. Brackman does not allege that these numbers were incorrect. Rather, she states only that the general ledger submitted for auditing, rather than budgetary, purposes showed no revenues for her division. According to Tippie, "revenue wasn't [even] the issue that [the Board was] looking at. They were looking at the expenditure side, the board was, reducing expenditures." To the extent that the Board looked at revenue, it was "in the context of how the other department [Bingham's] can run it, the same function, and generate whatever revenue." (The County's financial records show that recycling expenditures in fact decreased by $89,209.45 during Fiscal Year 2001 as a result of combining the two recycling operations. Revenues increased by almost $220,000.)

Having eliminated the funding for Brackman's division, the Board directed the implementation of a Reduction in Force (RIF). Both Brackman and Sewell were informed on April 25, 2000, that their positions were being eliminated under the RIF. The Board formally approved the RIF on May 15, 2000. On May 22, 2000, Brackman received official notification that her division was being eliminated and that she was being placed on layoff status effective July 1, 2000. Brackman was told by the Personnel Department that she met the minimum qualifications for the position of Recycling/Convenience Site Supervisor, which was a vacant position in the Department of Environmental Services. The position stated that an applicant "[m]ust be a qualified diesel mechanic with extensive experience," which Brackman was not, *or* have "any equivalent combination of education, training, and experience, which provides the requisite knowledge, skills, and abilities for this job." The pay grade for the position was a 26, two grades lower than Brackman's grade 28 at the time of the RIF. On July 7, 2000, Brackman told the County that she could not accept the position based on the physical demands of the job. Brackman alleges that the County's own RIF procedures were not followed in her case. Specifically, she claims that she was not afforded "bumping rights," though the County asserts that its RIF procedures do not afford such rights when an entire division is eliminated. Brack-

man also claims that the County created a new recycling position within the same classification even though it was supposedly saving money by eliminating recycling jobs; the County asserts that the new recycling position, the position offered to Brackman, was necessary regardless of whether Brackman's position was eliminated. Brackman also claims that she was not informed of her right to appeal the termination decision, but the letter sent to Brackman on May 22, 2000, included a copy of the County's RIF policy, which explains the grievance procedure.

Finally, Brackman alleges that County employees were aware several months before the Board voted to consolidate recycling operations that her department might be eliminated. Sewell stated that in the fall of 1999 she heard from a "person who attended a meeting of the Virginia Council for Litter Prevention" that Bingham had "said that he soon expected to take over all of the recycling functions for Fauquier County." Sewell also said that Billy Jenkins, Bingham's friend and a supervisor in his department, made derogatory comments about Brackman and led Sewell "to believe that the County administrators had not forgotten about [Brackman's] EEO complaint." According to Brackman, Sewell told her in January or February of 2000 that Jenkins said that "some things were happening with the board of supervisors and that somebody's job was in jeopardy down there and that if [Sewell] got her loyalties straight, it wouldn't be her job." Brackman and Sewell first learned that their jobs might be in trouble for real in March of 2000, when a newspaper article stated that the County was thinking about combining its recycling functions. They were not officially informed of the RIF for another month.

After Brackman left the County's employment, she filed a retaliation claim with the EEOC. She received a right to sue letter from the EEOC on March 13, 2001. On June 12, 2001, Brackman filed a complaint in the district court against the County alleging that she was terminated from her position in retaliation for the filing of her successful discrimination claim against the County in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991. On December 7, 2001, the County filed a motion for summary judgment, which the district court granted on January 28, 2002. In granting the County's motion, the district court concluded that Brackman failed to establish

a prima facie case of retaliation. The district court further concluded that even if Brackman established a prima facie case, the County offered a legitimate, nondiscriminatory reason for her termination which she failed to rebut with sufficient evidence of pretext. Brackman now appeals.

## II.

### A.

We review a district court's summary judgment determination de novo. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Summary judgment is appropriate only where there is no factual dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B.

Brackman challenges the district court's grant of summary judgment to the County on her retaliation claim. Brackman contends that she was retaliated against for her successful 1996 EEOC complaint against Bingham. To prove a prima facie case for retaliatory discharge, Brackman must show that (1) she engaged in protected activity; (2) the County took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). If Brackman establishes a prima facie case of retaliation, the burden shifts to the County to proffer evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action. *See Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the County carries its burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered" were pretextual. *Id.* For the reasons that follow, we conclude that Brackman fails to make out a prima facie case of retaliation. We further conclude that even if Brackman could make out her prima facie case, the County offers evidence of a legitimate, nondiscriminatory reason for Brackman's termination, which Brackman does not rebut with sufficient evidence of pretext.

We turn first to Brackman's prima facie case. Brackman has no problem satisfying the first element of her prima facie case, as her filing of a complaint with the EEOC constitutes protected activity. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003); *Causey*, 162 F.3d at 803. As to the second element, Brackman appears to argue that both the incorrect allocation of revenues from her division *and* her dismissal under the RIF constitute adverse employment actions. We will discuss these actions in turn. An adverse employment action can be proved if a plaintiff establishes that the challenged discriminatory acts "adversely affected the terms, conditions, or benefits of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks and citation omitted). But such acts must have "some significant detrimental effect" on the plaintiff. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). In this case, we fail to see how the incorrect allocation of revenue from Brackman's division had a "significant detrimental effect" on Brackman. She does not allege that the County disciplined her, changed her job status or pay, or otherwise harmed her as a result of the misallocation of her division's revenue funds. To the extent that Brackman argues that the misallocation of revenues led the County to implement the RIF, she overlooks the record evidence that the County based its decision to combine the recycling divisions on *her* estimates for her division's *projected* expenditures and revenues for FY 2000 and FY 2001, not on the incorrect revenue figures reflected in the general ledger. That is, Brackman does not allege that the revenue numbers relied upon by the Board (if, in fact, the Board was looking at revenue) were wrong. Rather, she alleges only that the general ledger, used for auditing purposes, showed no revenues for her division. On these facts, we simply fail to see how the misallocation of funds itself amounts to an "adverse employment action." *See Thompson*, 312 F.3d at 651-52 (no adverse employment action where plaintiff could not demonstrate that the employer's actions affected the terms, conditions, or benefits of plaintiff's employment). Moreover, even if we assumed that the misallocation constituted an adverse employment action, Brackman proffers no facts to establish a causal connection between her EEOC complaint and the misallocation. There is simply no evidence in the record that the revenue funds for Brackman's division were attributed to Bingham's division *because of* Brackman's earlier complaint against Bingham. Marcia Kotov testified that "[t]here was a mix up" with Brackman's revenues following her shift from Environmental

Services to General Services. Brackman's bare allegations that the County was out to get her and therefore intentionally misallocated the revenues from her division is insufficient to withstand a motion for summary judgment. Accordingly, Brackman fails to make out a prima facie case of retaliation based on her claim that the misallocation of revenues itself amounted to an adverse employment action.

Brackman's termination following the RIF is another matter. Clearly, her termination qualifies as an adverse employment action. *See King*, 328 F.3d at 151; *Boone*, 178 F.3d at 256. The question then is whether Brackman can show a causal connection between the filing of her EEOC complaint and her job loss under the RIF. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity."). We conclude that she cannot. For starters, the time lag between Brackman's EEOC complaint and her termination under the RIF weighs heavily against causation. More than three years elapsed between Brackman's filing of an EEOC complaint against Bingham in October 1996 and her termination in the spring of 2000. Even looking at the date of the Conciliation Agreement, as Brackman urges us to do, we see that more than two years elapsed between the March 1998 Conciliation Agreement and the notification to Brackman in April 2000 that her recycling position was being eliminated. *See Causey*, 162 F.3d at 803 (holding that a "thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation"); *Dowe*, 145 F.3d 653 at 657.

Even if time was not an issue, Brackman offers insufficient evidence to connect her EEOC charge with her termination. Brackman must establish that she would not have been terminated but for the fact that she engaged in statutorily protected activity. *Dowe*, 145 F.3d at 657. Clearly Brackman believes that she was retaliated against, but that alone is insufficient. *Chappell v. Sch. Bd. of the City of Virginia Beach*, 12 F. Supp. 2d 509, 517 (E.D. Va. 1998). The record reflects that at the time the Board began inquiring into the possibility of combining Brackman's recycling operations with those of the Department of Environmental Services, the Board members initiating the inquiry

were unaware of Brackman's earlier EEOC complaint. It is true that by the time the Board decided to eliminate Brackman's position, the Board was aware of Brackman's earlier protected activities. But, as Winkelman put it, "that's history and we're going to eliminate the duplication and the overstaffing of this operation." "Knowledge is necessary to establish causation, but it is not sufficient." *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998). Brackman needs something more to show causation. She emphasizes the fact that Bingham, Brackman's former supervisor about whom she complained to the EEOC in 1996, supplied the Board with calculations during the budgetary process and that some of the information furnished by Bingham was relied upon by the Board in making its decision to eliminate Brackman's division. Bingham, obviously, was aware of Brackman's charges against him at the time he provided the Board with the requested information. And Bingham had a history of animus towards Brackman. But Brackman does not proffer evidence showing that any of the information provided by Bingham was in any way inaccurate or misleading. She points only to the fact that the County's FY 2001 budget gave Bingham's department $97,655 to assume the recycling operations of her former division when Bingham had estimated it would take only $56,000 to assume those costs. We think this falls short of showing that Bingham's input was false or in some way engineered to strip Brackman of her position. Brackman's only other evidence on this score is that Bingham and others allegedly were aware several months before the RIF was made official that the County might consolidate its recycling operations. Sewell claims to have heard through the grapevine that Bingham was telling people in the fall of 1999 that he expected his department to assume all of the recycling operations for the County. And Brackman claims that Jenkins, a friend of Bingham's, made derogatory comments about her and suggested that "County administrators had not forgotten about [her] EEO complaint." But "[t]o find causation on the basis of this bare-boned evidence asks the court to move beyond inference and into the realm of mere 'speculation and conjecture.'" *Gibson*, 160 F.3d at 181 (internal quotation marks and citation omitted). With no further evidence supporting her theory, a reasonable factfinder could not draw from the record the conclusion that the County eliminated Brackman's position under the RIF in retaliation for her protected activity. Accordingly, we conclude

that Brackman fails to make out a prima facie case of retaliation sufficient to withstand the County's motion for summary judgment.

Even if we were to conclude that Brackman makes out a prima facie case, we would conclude that the County offered legitimate, nondiscriminatory reasons for the RIF. Specifically, Winkelman and Graham, the two members of the Board most actively involved in the budget cuts, had as their sole objective the elimination of needless spending by the County. Maintaining two recycling divisions appeared to be a waste of resources and thus the Board opted, based upon its calculations, to consolidate the two operations into one division. This explanation is sufficient to shift the burden to Brackman, who must show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. *See also Causey*, 162 F.3d at 803 (noting that the defendant's "budgetary constraints provide a legitimate non-discriminatory reason for its decision to reduce its workforce"). (While perhaps not legally relevant, we note that time bore out the Board's theory: the County saved nearly $90,000 in Fiscal Year 2001 by combining the recycling operations.) Brackman fails to proffer sufficient evidence to show that the County's explanation for her termination is false, or put differently, that she was impermissibly terminated because of her EEOC complaint. It is true that Brackman presents evidence that the County incorrectly deposited revenues from her division into Bingham's division. And Brackman presents evidence that some County employees may have been aware that her position was at risk in advance of the official RIF. She even proffers some evidence that the County's RIF procedures were not followed in her case. We note that the County did encourage Brackman to apply for the position of Recycling/Convenience Site Supervisor, which she declined to do because of the physical demands of the job. "The ultimate question is whether the employer intentionally [retaliated], and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [Brackman's] proffered reason . . . is correct." *Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 146-47 (2000) (internal quotation marks and citation omitted). It is not enough to disbelieve the County; the fact finder must believe Brackman's explanation of intentional retaliation. *Id.* We conclude that no rational jury could do so

based on the evidence in this record. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444-45 (4th Cir. 1998).

## III.

For all of the foregoing reasons, the judgment of the district court is

*AFFIRMED.*